UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PATRICIA GREEN, individually and on
behalf of all others similarly situated,

    Plaintiff,

    v.

PEPSICO, INC.

    Defendant.

_____/

CASE No.

## CLASS ACTION COMPLAINT

Plaintiff, Patricia Green, individually, and on behalf of all others similarly situated, by and through undersigned counsel, files this Class Action Complaint, and alleges against Defendant, PepsiCo, Inc., as follows:

## INTRODUCTION

1. Quaker Oats, now owned and made by PepsiCo, Inc., tells consumers that "[f]or generations, we've been inspired by the wholesome goodness of Quaker Oats" and instructs consumers to "[p]repare for all that lies ahead by filling your bowls, bellies, and hearts with the love of [a] nourishing breakfast."[1] Quaker Oats says that the brand introduced the first food-specific health claim for oatmeal: "[s]oluble fiber from oatmeal as part of a low saturated fat, low cholesterol diet, may reduce the risk of heart disease."[2] But recent testing confirmed that Old Fashioned Quaker Oats, and other Quaker products contain glyphosate, which the World Health Organization classifies as a "probable human carcinogen." Glyphosate is even more dangerous for children, whose bodies are more sensitive to exposure, leaving them more vulnerable to

---

[1] *Welcome to Quaker Oats*, Quaker Oats Company, 2018, http://www.quakeroats.com/ (last visited Aug. 23, 2018).
[2] *Inside Quaker*, 2018, *http*://www.quakeroats.com/about-quaker-oats/content/quaker-history.aspx (last visited Aug. 23, 2018).

carcinogens. Ms. Green, a frequent purchaser of Quaker Oats' oatmeal, had been unaware that Quaker Oats products contained glyphosate. Had Plaintiff known that Old Fashioned Quaker Oats contained glyphosate, she would never have purchased them. Plaintiff seeks class-wide redress.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Patricia Green resides in Broward County, Florida and is a citizen of the State of Florida. Ms. Green purchased Old Fashioned Quaker Oats in the class period. At all times relevant, Ms. Green was unaware that these products contained or could contain glyphosate. Had she known that these products contained or could contain glyphosate, she would not have purchased them. Ms. Green incurred losses and damages as a result of the activities alleged herein. Ms. Green suffered injury-in-fact for which she is entitled to seek monetary damages.

3. Defendant, PepsiCo, Inc. ("PepsiCo" or "Defendant"), is a North Carolina corporation and its principal place of business is in New York. PepsiCo has been and still is engaged in the business of manufacturing, promoting and selling Old Fashioned Quaker Oats. These products are sold throughout the United States.

4. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of the Plaintiff Class is a citizen of the State of Florida, Defendant is a citizen of the North Carolina or New York, there are currently 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.00.

5. The Court has personal jurisdiction over Defendant because it does business in the Southern District of Florida and has sufficient minimum contacts with this District. Defendant intentionally avails itself of the markets in this State through the promotion, marketing, and sale of Old Fashioned Quaker Oats to render the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

6.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## GENERAL FACTUAL ALLEGATIONS

**A.  Glyphosate, Carcinogenic and Dangerous to Human Health, Is Present In Old Fashioned Quaker Oats**

7.      Glyphosate is an herbicide that is used on hundreds of crops, including corn and soybeans.  It is the most heavily used chemical weedkiller in food and agricultural production.

8.      Each year, more than 300 million pounds of glyphosate-based herbicides are sprayed on food crops across the United States.

9.      Increasingly, glyphosate is also sprayed on oats just before they are harvested.

10.     Scientific evidence shows that even ultra-low levels of glyphosate may be harmful to human health.  Research shows that exposure to glyphosate can be cancerous, alter and damage the body's hormones, and damage organs like the kidney and liver.

11.     The International Agency for Research on Cancer, part of the World Health Organization, classifies glyphosate as "probably carcinogenic to humans."  IARC noted there was limited evidence of carcinogenicity in humans for non-Hodgkin lymphoma, and that there was convincing evidence that glyphosate can cause cancer in laboratory animals.[3]

12.     The State of California listed glyphosate as a chemical "known to cause cancer."[4]

---

[3] *IARC Monographs Volume 112: Evaluation of Five Organophosphate Insecticides and Herbicides*, World Health Organization:  International Agency for Research on Cancer (Mar. 20, 2015), http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf; *see also Alarming Levels of Glyphosate Contamination Found in Popular American Foods*, Food Democracy Now!, (Nov. 14, 2016, 10:53 PM), https://www.fooddemocracynow.org/blog/2016/nov/14.
[4] *See Glyphosate*, OEHHA, https://oehha.ca.gov/proposition-65/chemicals/glyphosate (last visited August 23, 2018).

13. Various organizations tested food made of glyphosate-sprayed crops to determine whether the food contained glyphosate, and if so, at what levels.

14. For example, the Center For Environmental Health performed a study testing samples of various cereal brands and found glyphosate levels ranging from 300 ppb to more than 2,000 ppb.[5] That study found glyphosate levels of 2,015 ppb in Quaker Oatmeal Squares.

15. Most recently, on August 15, 2018, the Environmental Working Group (EWG), a nonprofit organization dedicated to protecting human health and the environment, published its study examining glyphosate in various products made with conventionally grown oats. The EWG study found glyphosate in 43 out of 45 tested samples.[6] In 31 of those samples, glyphosate was detected above EWG's health benchmark of 160 ppb. Three samples of Quaker Old Fashioned Oats had glyphosate levels ranging from 390 ppb to 1300 ppb. Other Quaker products tested positive for glyphosate in amounts greater than the EWG's threshold including Quaker Simply Granola Oats, Honey, Raisins & Almonds (in amounts of 430 ppb and 400 ppb), Quaker Dinosaur Eggs, Brown Sugar, Instant Oatmeal (in amounts of 620 ppb and 780 ppb), and Quaker Steel Cut Oats (in amounts of 530 ppb and 290 ppb).

**B. PepsiCo Fails to Inform Consumers Old Fashioned Quaker Oats Contain Glyphosate**

16. Quaker Oats are made with oats. PepsiCo informs consumers that oats are rich in nutrients, like fiber and protein. PepsiCo says that Quaker Oats are "inspired by wholesome goodness" and are a "nourishing breakfast."[7]

---

[5] *Glyphosate in Popular Cereals*, Center for Environmental Health, https://www.ceh.org/glyphosate-popular-cereals/ (last visited August 23, 2018).
[6] *Breakfast With a Dose of Roundup?*, EWG's Children's Health Initiative (Aug. 15, 2018), https://www.ewg.org/childrenshealth/glyphosateincereal/#.W3TTbPZFw2w.
[7] *Welcome to Quaker Oats*, Quaker Oats Company, 2018, http://www.quakeroats.com/ (last visited Aug. 23, 2018).

17. Quaker Oats' ingredients are: whole grain oats, salt, guar gum, calcium carbonate, iron, niacinamide, calcium pantothenate, folic acid, Vitamin B1, and Vitamin B6.

18. PepsiCo knew or should have known that its products contain glyphosate but fails to tell consumers that Quaker Oats, including Old Fashioned Quaker Oats have glyphosate.

## CLASS ACTION ALLEGATIONS

19. Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of themselves, a Nationwide Class and a Florida Class of similarly situated individuals. The Nationwide Class is defined as: All persons who purchased Old Fashioned Quaker Oats in the United States. The Florida Class is defined as all persons in the State of Florida who purchased Old Fashioned Quaker Oats.

20. The Nationwide Class, the Florida Class, and their members are sometimes referred to as "Class" or "Classes."

21. Excluded from the Class are: Defendant; any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant; Defendant's legal representatives, assignees, and successors; the Judge to whom this case is assigned and any member of the Judge's immediate family.

22. Numerosity: The Class consists of many thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

23. Commonality: There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

   a. Whether Defendant violated state consumer protection laws;
   b. Whether Defendant has been unjustly enriched;

    c. Whether Plaintiff and class members have sustained damages and, if so, the proper measure thereof;

    d. Whether Plaintiff and Class members are entitled to restitution, and, if so, the proper measure thereof;

    e. Whether Plaintiff and Class members are entitled to injunctive relief.

24. Typicality: Plaintiff's claims are typical of the claims of the class. Plaintiff suffered the same injury as class members – she purchased Old Fashioned Quaker Oats unaware they contained glyphosate, and had she known otherwise, she would not have purchased them.

25. Adequacy: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained competent and capable attorneys experienced in complex and class action litigation, including consumer class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resourced to do so. Neither Plaintiff nor her counsel have interests that are contrary to or that conflict with the Class.

26. Predominance: The common issues that comprise the basis for this lawsuit predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

27. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy for at least the following reasons:

    a. Absent a class action, class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

    b. It would be a substantial hardship for most individual class members if they were forced to prosecute individual actions;

    c. Once Defendant's liability has been adjudicated, the Court will be able to determine the claims of all Class members;

    d. A class action will permit an orderly and expeditious administration of the claims, foster economies of time, effort and expense, and ensure uniformity of decisions;

    e. The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

    f. Defendant has acted on grounds generally applicable to class members, making class-wide relief appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Florida's Deceptive & Unfair Trade Practices Act**
**(Brought on behalf of the Florida Class)**

28. Plaintiff brings this claim on behalf of the Florida Statewide Class (the "Florida Class").

29. The Florida Class are "consumers" within the meaning of the Florida Unfair and Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

30. Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

31. The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

32. In the course of business, Defendant failed to disclose or actively concealed information reasonable consumers need to know before purchasing Defendant's products.

33. As alleged above, Defendant knew or should have known that Old Fashioned Quaker Oats contained glyphosate but withheld this information from consumers and the general public. The Florida Class was deceived by Defendant's omission into believing that Old Fashioned Quaker Oats are safe or free of glyphosate.

34. Defendant owed consumers a duty to disclose the presence of glyphosate in Old Fashioned Quaker Oats.

35. As alleged above, Defendant made material statements about the safety of Quaker Oats that were wither false or misleading.

36. Defendant knew or should have known its conduct violated the FDUPTA.

37. Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Florida Class, about the true nature of Old Fashioned Quaker Oats.

38. The Florida Class suffered ascertainable loss caused by Defendant's failure to disclose material information. But for Defendant's deceptive and unfair conduct, Plaintiff and the Florida Class would not have purchased Old Fashioned Quaker Oats.

39. As a direct and proximate result of Defendant's FDUPTA violations, Plaintiff and the Florida Class suffered injury in fact and actual damages.

40. Plaintiff and Florida Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUPTA.

**SECOND CAUSE OF ACTION**
**Breach of Warranty**
**(Brought on behalf of the Nationwide Class)**

41. As alleged above, Defendant warrants, among other things, that Quaker Oats are "inspired by wholesome goodness," are a "nourishing breakfast," and are "part of a low saturated fat, low cholesterol diet, may reduce the risk of heart disease." Defendant further publishes a list of ingredients contained in Old Fashioned Quaker Oats.

42. Old Fashioned Quaker Oats are not sold as warranted because they contain glyphosate, a known or probable carcinogen, which Defendant failed to inform consumers.

43. Plaintiff and Class members purchased Old Fashioned Quaker Oats unaware that they contained glyphosate.

44. But for Defendant's breach of warranty, Plaintiff and the Class would not have purchased Old Fashioned Quaker Oats.

45. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class suffered injury in fact and actual damages.

### THIRD CAUSE OF ACTION
**Breach of Implied Warranty of Merchantability**
**(Brought on Behalf of the Nationwide Class)**

46. As alleged above, Defendant warranted that Old Fashioned Quaker Oats are, among other things, "a nourishing breakfast," and "part of a low saturated fat, low cholesterol diet, may reduce the risk of heart disease."

47. Thus, Defendant warranted that Old Fashioned Quaker Oats were reasonably fit for the intended use of food consumption.

48. Because Old Fashioned Quaker Oats contain glyphosate, they are not reasonably fit for the uses intended or reasonably foreseeable.

49. Plaintiff and Class members purchased Old Fashioned Quaker Oats unaware that they contained glyphosate.

50. But for Defendant's breach of warranty, Plaintiff and the Class would not have purchased Old Fashioned Quaker Oats.

51. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class suffered injury in fact and actual damages.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (Brought on Behalf of the Nationwide Class)

52. As a result of Defendant's unlawful conduct described above, Defendant was enriched at the expense of Plaintiff and the Class.

53. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class. Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class for monies paid to Defendant for Old Fashioned Quaker Oats.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself individually and on behalf of all Class members, seeks the following relief against Defendant:

A. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, and finding Plaintiff is an adequate representative of the Class;

B. An order awarding Plaintiff and the proposed Class members damages, and punitive damages in the amount to be determined at trial;

C. An order awarding restitution and disgorgement of Defendant's revenues from the products to Plaintiff and the proposed Class members;

D. An order awarding attorneys' fees and costs to Plaintiff;

E.   An order awarding declaratory relief and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

F.   An order providing for all other such relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  August 24, 2018                                      s/Jeffrey L. Haberman

**SCHLESINGER LAW OFFICES, P.A.**
Scott P. Schlesinger
Jonathan R. Gdanski
Jeffrey L. Haberman
1212 SE Third Avenue
Ft. Lauderdale, FL 33316
scott@schlesingerlaw.com
jgdanski@schlesingerlaw.com
jhaberman@schlesingerlaw.com
954-467-8800