United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Patricia Green, individually and on behalf of all others similarly situated, Plaintiff, <br><br> v. <br><br> PepsiCo, Inc., Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 18-62011-Civ-Scola <br> ) <br> ) <br> ) |

### Order on Defendant's Motion to Dismiss

Plaintiff Patricia Green brings this suit for violation of Florida's Deceptive And Unfair Trade Practices Act (FDUTPA), breach of warranty, breach of implied warranty of merchantability, and unjust enrichment against Defendant PepsiCo, Inc. for failing to inform consumers that Old Fashioned Quaker Oats ("Quaker Oats") contain trace amounts of glyphosate, a commonly used pesticide. (Compl. at 4-5, ECF No. 1.) This matter is before the Court on Defendant PepsiCo's Motion to Dismiss the Plaintiff's complaint (ECF No. 16). For the reasons discussed below, the Court **grants** the Defendant's motion **(ECF No. 16)** and dismisses the complaint.

### I. Background

PepsiCo owns and produces a number of oatmeal products, including Quaker Oats. (ECF No. 1 at ¶ 1.) Glyphosate is an herbicide used on hundreds of crops in the United States. It is the most heavily used chemical weed killer in food and agricultural production in the world. (*Id.* at ¶ 7.) It is also sprayed on oats before they are harvested. (*Id.* at ¶ 9.)

The use of glyphosate is regulated by the Food & Drug Administration (FDA) and the Environmental Protection Agency (EPA). (ECF No. 16 at 4.) The EPA reviews and approves the use of herbicides and establishes the maximum amounts of residues permitted on food products. The FDA then enforces the tolerances set by the EPA. (*Id.*) Currently, the EPA's tolerance level for glyphosate is 30 parts per million (ppm). (*Id.* at 5.)

According to the Plaintiff, the Environmental Working Group (EWG), a nonprofit organization, recommends that the threshold amount of glyphosate should be 1.6 ppm. (ECF No. 1 at 4.) In a recent study by EWG, the amount of glyphosate in oatmeal products, including Quaker Oats, exceeded EWG's recommended levels. (*Id.*)

Plaintiff Green purports to represent a nationwide class defined as "all persons who purchased Old Fashioned Quaker Oats in the United States" and a Florida class defined as "all persons in the State of Florida who purchased Old Fashioned Quaker Oats." (ECF No. 1 at ¶ 19.) The Plaintiff alleges that she (and members of the class) has been harmed by PepsiCo's failure to tell consumers that Quaker Oats contain glyphosate. (*Id.* at ¶ 18.) If she had known that the product contained glyphosate, she would not have purchased it because glyphosate is dangerous to human health. (ECF No. 23 at 6.)

## II.   Legal Standard

Because the question of Article III standing implicates subject matter jurisdiction, it must be addressed as a threshold matter prior to the merits of any underlying claims. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). Article III of the Constitution grants federal courts judicial power to decide only actual "Cases" and "Controversies." U.S. Const. Art. III § 2. The doctrine of standing is a "core component" of this fundamental limitation that "determin[es] the power of the court to entertain the suit." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims, and the court is powerless to continue." *Id.* (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006)).

Standing under Article III consists of three elements: the plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish the first element, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

## III.   Analysis

Count I of the Plaintiff's complaint is for violation of FDUTPA. According to the Plaintiff, PepsiCo engaged in deceptive trade practices by failing to disclose the presence of glyphosate in Quaker Oats. (ECF No. 1 at 9.) Count II is a claim for breach of warranty. The Plaintiff alleges that Quaker Oats is not sold as warranted, as a "nourishing breakfast" and "inspired by wholesome goodness," because it contains glyphosate. (*Id.* at 9.) Count III is a claim for breach of implied warranty of merchantability. The Plaintiff alleges that the Defendant warranted that Quaker Oats were reasonably fit for the intended use of food consumption

but they are not because they contain glyphosate. (*Id.*). And Count IV is a count for unjust enrichment based on the conduct in Counts I-III. (*Id.* at 10.)

The Defendant moves to dismiss the complaint in its entirety based on the Plaintiff's lack of standing. (ECF No. 16 at 9.) The Defendant argues that the Plaintiff is unable to show that she suffered an injury in fact. (*Id.* at 9-10.) The Plaintiff responds that she has alleged an "economic injury" because she would not have purchased the product had she known that it contained glyphosate. (ECF No. 23 at 6.) Upon careful consideration, the Court agrees with the Defendant.

Here, the Plaintiff does not allege that her health has suffered as a result of eating Quaker Oats. Instead, the Plaintiff's harm is "economic loss" resulting from buying a product under allegedly false pretenses. These claims fail to establish "injury in fact." *See Birmingham v. Walgreens Co.,* No. 12-60922, 2014 WL 12479929, at *4 (S.D. Fla. Jan. 3, 2014) (Williams, J.) (finding economic harm legally insufficient to establish injury in fact). The Plaintiff's economic harm is "legally insufficient because Plaintiff already consumed the product, did not suffer distinct and palpable adverse health consequences, and otherwise suffered no injuries from [the product]." *Id. See also Arcure v. Kellogg Company*, No. 10-cv-192-FtM-36SPC, 2011 WL 13294631, at *3 (M.D. Fla. March 29, 2011) (holding that purchasers of crackers subject to salmonella recall did not establish injury in fact because they did not get sick).

There are instances in which economic harm may be sufficient to establish standing. For example, in breach of contract claims. The difference between this lawsuit and a breach of contract lawsuit is explained in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002). In *Rivera,* plaintiffs sued the pharmaceutical company that produced Duract, a pain killer. The drug was voluntarily withdrawn by the defendant following reports of liver failure among its long-time users. *Id.* at 317. The plaintiffs in *Rivera* were individuals who had taken the drug but had not suffered any physical harm. *Id.* The plaintiffs sought to recover under theories of implied warranties of merchantability, Texas's deceptive trade practices law, and unjust enrichment. *Id.*

The Fifth Circuit held that the plaintiff lacked standing. *Id.* at 320. In so holding, the court explained that the plaintiff was not denied "the benefit of the bargain." *Id.* The plaintiff "paid for an effective pain killer, and she received just that—the benefit of her bargain." *Id.*

Like in *Rivera,* the Plaintiff purchased oatmeal and "received just that—the benefit of her bargain." *Id.* The Plaintiff's attempt to recast her claims "in the language of contract law" fails. *See id.* at 320. "The wrongs [ ] alleg[ed]—failure to warn and [others]—are products liability claims. Yet, the damages [ ] assert[ed]—benefit of the bargain, out of pocket expenditures—are contract law

damages . . . Such artful pleading, however, is not enough to create an injury in fact." *Id.* at 320-21. Accordingly, the Plaintiff has failed to allege an injury in fact based on her purchase of Quaker Oats.

### IV. Conclusion

For the reasons set out above, Defendant PepsiCo's motion to dismiss (**ECF No. 16**) is **granted.** All pending motions, if any, are **denied as moot.** The Clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida, on April 12, 2019.

_____
Robert N. Scola, Jr.
United States District Judge